**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT MOTTO and JILL MOTTO,** <br> *Plaintiffs,* <br><br> **v.** <br><br> **NEWELL BRANDS, INC. and THE** <br> **YANKEE CANDLE COMPANY, INC.,** <br> *Defendants.* | **Civil No. 24-1338** |

<u>**MEMORANDUM**</u>

**Costello, J.**                                                              **February 5, 2026**

Plaintiffs Robert and Jill Motto bring this action to recover for property damage to their

home arising from a fire allegedly caused by a defective candle manufactured and sold by

Defendants Newell Brands and The Yankee Candle Company.  During the litigation, Plaintiffs

retained two experts to investigate the origin and cause of the fire.  These experts concluded that

the candle was the cause of the fire.  Defendants disagree and have moved to preclude both

experts' testimony, arguing that their opinions do not satisfy the minimum reliability

requirements set forth in Federal Rule of Evidence 702.  For the reasons that follow, the Court

will deny Defendants' motion as to both experts.

**I.        BACKGROUND**

The candle in question is a 22-ounce scented Yankee candle that comes in a glass jar.

ECF No. 29-2 at 6.  Plaintiff Jill Motto lit the candle and placed it in a metal decorative candle

holder on Plaintiffs' wooden dining room table, which was covered with a variety of flammable

objects, including a vinyl tablecloth, papers, hats, and file folders.  *Id.* at 7.  Plaintiff then left the

house for a couple of hours, leaving the candle burning unattended.  *Id.*  No one else was present

at the house during this time frame. *Id.* When Plaintiff returned home, she discovered a fire and extensive damage to the house. *Id.* Plaintiffs subsequently sued Defendants, alleging three causes of action: negligence, strict liability, and breach of the implied warranty of merchantability. *Id.* at 5.

The parties dispute the cause of the fire. Plaintiffs contend that the fire was caused by the candle, which they argue was defective. *See generally* ECF No. 32-2. Their position on causation is supported by the testimony of two experts, Roger Spadt and Dr. John Golder.

Spadt has over forty years of public and private experience investigating fires. *Id.* at 14. Spadt examined the fire scene at Plaintiffs' house and conducted interviews with a variety of witnesses. *Id.* Based on his investigation, Spadt concluded that the fire was caused by the candle, which he deemed "the only competent ignition source within the area of the fire's origin[.]" *Id.* at 3. Dr. Golder is a former ATF officer and current forensic fire investigator with a Ph.D. in forensic sciences and over a decade of experience investigating product defects, including candles. *Id.* at 18. Dr. Golder reviewed photographs of the fire scene and witness interviews and conducted a burn test on the same type of Yankee candle. He also determined that the fire was caused by the candle, "which had been burning for an extended period, causing the candle to reach flashover conditions due to the inability of the metal container allowing the heat to dissipate." *Id.* at 3-4.

Defendants dispute that the fire was caused by the candle and retained their own expert, Dr. Richard Roby, to investigate the circumstances surrounding the fire. Dr. Roby concluded that if the candle was a viable ignition source, then the cause of the fire was the misuse of the candle by Plaintiff Jill Motto when she allowed it to burn for hours unattended in the decorative metal holder. ECF No. 29-2 at 18.

Defendants moved to preclude the testimony of Spadt and Dr. Golder under Federal Rule of Evidence 702. *See generally* ECF No. 29. Defendants argue that Spadt did not follow industry guidelines in forming his opinion on the cause of the fire, and therefore his testimony is not based on a reliable methodology. *See* ECF No. 29-2 at 13-15. Defendants argue that Dr. Golder's testimony is based on insufficient facts and data and the product of unreliable methods. *Id.* at 15-17. They also argue that Dr. Golder did not reliably apply scientific principles and methods to the facts of this case and that his conclusions are based on pure speculation. *Id.* at 18.

## II.    LEGAL STANDARD

To be admissible, expert testimony must be both reliable and relevant. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Federal Rule of Evidence 702 provides that a qualified expert may offer an opinion if (1) his or her testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has applied the principles and methods reliably to the facts of the case.[1] Fed. R. Evid. 702(b)-(d).

The reliability analysis required by *Daubert* "'applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion.'" *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012) (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)). In 2023, Rule 702 was amended to clarify that "a court must evaluate the reliability of an expert's conclusions drawn from his or her methodology, not just the methodology itself." *Bolder v. Brecker*, 23cv05138,

---

[1] Defendants allude to fit and/or qualification issues in their motion, but do not substantively brief them, so the Court will not consider these arguments raised. *See* ECF No. 29-2 at 4-5 (stating that Plaintiffs' experts' opinions "are unhelpful factual assertions that are little more than an advocate's closing argument with an expert's signature" and that the opinions "are likely to overwhelm, mislead, and confuse a lay jury."). Regardless, the Court finds that both requirements are satisfied.

2025 WL 3048966, at *2-3 (E.D. Pa. Oct. 31, 2025) (internal quotations omitted).  In undertaking this analysis, trial courts serve an important gatekeeping function to "ensure that [a proposed] expert's opinion [is] based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *ZF Meritor*, 696 F.3d at 290 (internal quotations omitted).

"'The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact[]' and Rule 702 'has a liberal policy of admissibility.'" *Doe v. Haverford Sch.*, 24cv0618, 2025 WL 3008138, at *6 (E.D. Pa. Oct. 27, 2025) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). Accordingly, "[t]he party offering an expert does not need to show that the expert's opinions are necessarily correct, but rather only that the opinions are reliable by a preponderance of the evidence." *Penn-Dion Corp. v. Great Am. Ins. Co. of New York*, 17cv4634, 2022 WL 20742700, at *1 n.1 (E.D. Pa. Apr. 20, 2022) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1997)). "Rule 702 and *Daubert* put their faith in an adversary system designed to expose flawed expertise." *U.S. v. Mitchell*, 365 F.3d 215, 244-45 (3d Cir. 2004). "As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Id.* at 244 (internal quotations omitted).

## III.    DISCUSSION

Plaintiffs argue that Spadt's testimony is not reliable because he failed to follow industry guidelines for methodology in fire investigations.  Specifically, Plaintiffs argue that he failed to

properly analyze the origin of the fire according to the scientific standards set forth in NFPA 921. ECF No. 29-2 at 14-17.

### A.    Roger Spadt

#### 1.    Industry Guidelines for Fire Investigations

The National Fire Protection Association published an industry guide for investigations into the origin and cause of fires, "NFPA 921." *See generally* ECF No. 32-7.  NFPA 921 sets forth the scientific methods the Association recommends investigators use to determine the cause of a fire.  *Id.*  This scientific method generally requires an investigator to "define the problem, collect data, analyze data, develop hypotheses, test the hypotheses, and select a final hypothesis." *Id.* § 4.3.  The parties agree that the scientific method outlined in NFPA 921, if adhered to, satisfies Rule 702's reliability requirements.  *See* ECF No. 29-2 at 8 (describing the guide as "recognized" and "authoritative" in the industry); ECF No. 32-2 at 13 (collecting district court cases endorsing the reliability of the method set forth in NFPA 921).

However, the parties disagree about the degree to which an investigator must follow every provision of NFPA 921.  Defendants characterize NFPA 921 as "the universally accepted peer-reviewed comprehensive guide to procedures and techniques for fire investigations in the United States."  ECF No. 29-2 at 13.  Consequently, Defendants contend that any deviation from the guidelines by an investigator should be disqualifying.  *See* ECF No. 29-2 at 13-15 (highlighting various provisions Defendants allege Spadt did not follow).  Plaintiffs respond that "NFPA 921 is not meant to be a rigid book of rules[,]" and contend that "an investigation that follows the scientific method comports with NFPA 921, even if it was not done in strict adherence to each provision."  ECF No. 32-2 at 13.

Plaintiffs have the better argument.  The plain text of NFPA 921 makes clear that it is not an exacting set of rules.  Section 1.3 states that "deviations from these procedures . . . are not necessarily wrong or inferior."  ECF No. 32-7.  It explains that "every fire and explosion incident is in some way unique and different from any other," therefore the guidelines are "not designed to encompass all of the necessary components of a complete investigation or analysis of any one case."  *Id.* §1.3.2; *see also id.* §1.3.3 ("Not every portion of this document may be applicable to every fire or explosion incident.").  Thus, Defendants are wrong that any minor deviation from the guidelines renders Spadt's investigation unreliable.

2.    <u>Application of Industry Guidelines by Spadt</u>

Although NFPA 921 permits some flexibility in approach, the guidelines are clear that "[t]he scientific method . . . should be applied in every instance."  *Id.* §1.3.3.  Defendants argue that Spadt failed to do so here because he "provided no specific bases for his opinion" and failed to discuss or undertake any "scientific testing" or analysis.  ECF No. 29-2 at 14.  That is wrong for three reasons.

First, NFPA 921 does not require investigators to conduct any physical or scientific tests. *See, e.g.*, *Allstate Ins. Co. v. LG Elecs. USA, Inc.*, 19cv3529, 2021 WL 2875603, at *4 (E.D. Pa. July 8, 2021) ("NFPA does not require [an expert] to conduct specific testing"); *State Farm Fire & Cas. Co. v. Hartman Contractors*, 14cv6535, 2017 WL 2180292, at *7 (E.D. Pa. May 18, 2017) ("NFPA standards do not require physical experimentation").  Rather, NFPA 921 defines the scientific method as "defining the problem, collecting data, analyzing data, developing a hypothesis through inductive reasoning, testing the hypothesis through inductive reasoning, testing the hypothesis through deductive reasoning, and selecting a final hypothesis." *Smith v. Spectrum Brands, Inc.*, 2022 WL 3229330, at *4 (E.D. Pa. Aug. 10, 2022).  That may or may not

6

include a physical experiment or test.  ECF No. 32-7 § 4.3.3 (noting that investigators may collect data "by observation, experiment, or other direct data-gathering means").

Second, it is clear from Spadt's report that he employed a scientific method that generally comports with the approach outlined in NFPA 921.  Spadt collected data by examining the fire scene, taking photographs of the damage, creating a field diagram, and conducting witness interviews.  *See* ECF No. 32-2 at 14.  He analyzed the data by observing the location of the burn patterns in the dining room, examining where the candle's remains were located, examining the other items on the dining table, and considering the statements of the fire marshals who arrived on scene.  *Id.* at 14-15.  Spadt considered alternative causes of the fire, including by examining the home's branch circuit electric conductors and a ceiling fan as potential induction sources, but ruled out these options because they were inconsistent with the physical evidence and witness interviews.  *Id.* at 15 (explaining that Spadt did not observe thermal damage in the ceiling near the conductors, which he would expect to see if they were the ignition source, and that the switch was off at the time of the fire).  He further considered the lack of known prior electrical issues in Plaintiffs' house.  *Id.* at 15-16.  Through these observations, he deduced that the candle was the probable cause of the fire because it was the only competent ignition source in that area of the house.  *Id.* at 16.

Courts considering *Daubert* motions in fire damage cases have found that similar investigatory processes satisfied NFPA 921.  *See, e.g.*, *Smith*, 2022 WL 3229330, at *4-5 (finding that expert adhered to NFPA 921 standards when he spoke to relevant parties, collected and examined physical evidence, considered and ruled out alternative causes, and tested hypotheses "through analytical reasoning based on scientific principles of electrical engineering"); *Hartman Contractors*, 2017 WL 2180292, at *7 (finding that expert adhered to standards by visiting the

7

scene of the fire and observing the evidence, reviewing deposition testimony, and "analyz[ing] the evidence based on his knowledge of electrical engineering and home construction").

Finally, even if Spadt's processes did not adhere to NFPA 921 standards, they independently satisfy Rule 702 and *Daubert*. Spadt applied the "methods and procedures of science" (in this case, electrical engineering and fire science) to the physical evidence and witness interviews he reviewed in this case, so his opinion rests on "good grounds." *See In re Paoli*, 35 F.3d at 742; *see also Allstate Ins. Co. v. Anderson*, 15cv2651, 2016 WL 2939506, at *2 n.4 (E.D. Pa. May 20, 2016), *amended*, 15cv2651, 2016 WL 2997675 (E.D. Pa. May 23, 2016) (denying motion to preclude expert in fire damage case because the expert's report satisfied *Daubert* without relying on NFPA).

At bottom, the various issues Defendants raise with Spadt's testimony are probative of the weight his testimony should be afforded, not the reliability of his methodology. *See United States for Use of Colorado Custom Rock Corp. v. G&C FAB-CON, LLC; EVEREST REINSURANCE COMPANY*, 24cv3053, 2025 WL 3090745, at *2-3 (3d Cir. Nov. 5, 2025) (affirming District Court's denial of *Daubert* motion because issues flagged by moving party were more probative of "the weight the opinion should be afforded, rather than the reliability of [the expert's] testimony"). Defendants may test the credibility of Spadt's opinions through competing expert testimony and active cross-examination. *See Mitchell*, 365 F.3d at 245 (Federal Rules express preference for testing credibility and weight to be afforded to expert opinions in adversary process). Accordingly, the Court will deny Defendants' motion to preclude Spadt's testimony.

8

**B.    Dr. John Golder**

Defendants argue that Dr. Golder's testimony is unreliable because it is not based on sufficient facts or data, not the product of reliable principles and methods, and his conclusions are based solely on unfounded speculation.  *See* ECF No. 29-2 at 15-18.

1.    Insufficient Facts/Data

Defendants argue that Dr. Golder's opinion that the candle reached flashover conditions that resulted in an explosion igniting the materials on the dining room table was reached "without evidence[.]"  ECF No. 29-2 at 16.  That is not true.

Dr. Golder based his report on a variety of evidence.  He examined the candle's remains, reviewed photographs and x-rays of the damage to the house, reviewed deposition testimony of witnesses in this case, and conducted a burn test on an identical Yankee candle.  ECF No. 32-2 at 19; ECF No. 32-4 at 1, 7.  Dr. Golder also consulted candle safety standards and peer-reviewed literature and employed his knowledge of forensic science, fire dynamics, chemistry, physics, and origin and cause investigations.  ECF No. 32-4 at 1.  All of these inputs constitute "good grounds" for Dr. Golder's opinion.  *See In re Paoli*, 35 F.3d at 742; *see also Slappy-Sutton v. Speedway LLC*, 16cv4765, 2019 WL 3456843, at *3 (E.D. Pa. July 31, 2019) (finding expert's opinion was based on sufficient facts and data when expert relied on inspections of the scene of the incident, measurements and photographs of the scene, his engineering expertise, and experience with similar projects).

2.    Unreliable Methods & Application of Methods

Next, Defendants argue that Dr. Golder's opinion is not based on any scientific method but on mere speculation and his own *ipse dixit*.  ECF No. 29-2 at 16.  Defendants are wrong.

Dr. Golder relied on his expertise in fire dynamics, fire science, physics, and chemistry, and used that background to examine the candle's remains, review photographs, x-rays, and deposition testimony, and conduct a burn test of an exemplar Yankee candle. ECF No. 32-2 at 19; ECF No. 32-4 at 1. He also consulted relevant literature on fire causation from candles. *See* ECF No. 32-4 at 3. In other words, Dr. Golder applied the "methods and procedures of science" to the data he reviewed in this case, rather than relying on his own "subjective belief or unsupported speculation." *ZF Meritor*, 696 F.3d at 290; *compare to Husick v. Unum Life Ins. Co. of Am.*, 21cv5599, 2025 WL 3266123, at *4 (E.D. Pa. Nov. 21, 2025) (granting *Daubert* motion where it was "not clear that [the expert] used *any* discernible methodology to reach his conclusion") (emphasis added).

In the conclusions section of his report, Dr. Golder articulates how his scientific analysis informed his opinion. For instance, he explains that when a glass container is placed into a metal container, it is harder for radiant heat to dissipate away from the glass, meaning the container acts as a heat sink to re-radiate energy back into the glass and cause a flashover. ECF No. 32-4 at 10. A flashover can cause the flame height to increase, which can break the glass and cause the fire to spread to nearby surfaces. *Id.* These explanations bridge the gap between Dr. Golder's conclusions and his data and methods. *See Slatowski v. Sig Sauer, Inc.*, 148 F.4th 132, 138 (3d Cir. 2025) (expert must "bridg[e] the gap between theory and reality" by explaining how opinion was the product of reliable principles and methods).

### 3. Defendants' Remaining Arguments

Defendants raise several additional issues with Dr. Golder's report. Namely, that (1) he failed to consider alternative causes of the fire; (2) the burn test he conducted on an exemplar candle and metal holder was not adequately explained and/or sufficiently similar to the

circumstances of the fire; and (3) Dr. Golder failed to consider the role that Plaintiffs played in causing the fire. *See* ECF No. 29-2 at 15-18.

These arguments are more probative of the weight to be afforded to Dr. Golder's testimony than the reliability of his methods or conclusions. *See United States for Use of Colorado Custom Rock Corp*, 2025 WL 3090745, at *2-3. Defendants can cross-examine Dr. Golder about whether he considered alternative causes of the fire, and if he did not, how that would impact his opinion. Defendants can similarly cross-examine him about the accuracy of his burn test and the conclusions he drew from that test. Defendants can also offer their own expert testimony suggesting that, even if the candle was a viable ignition source, the fire was caused by the misuse of the candle by Plaintiffs. *See* ECF No. 29-2 at 18 (critiquing Dr. Golder's testimony because Defendants' own expert opined that Plaintiffs' misuse of the candle caused the fire).

But as described above, *supra* at 9, Dr. Golder's testimony rests on "good grounds" and is relevant to the key issues in this case. Accordingly, his opinions should be put before a factfinder and tested via the adversary process. *See Mitchell*, 365 F.3d at 245.

## IV.    CONCLUSION

Both Spadt's and Dr. Golder's conclusions meet the minimum reliability requirements of Rule 702. Defendants can test those conclusions at trial through competing expert testimony and active cross-examination. Accordingly, Defendants' motion is denied. An appropriate Order will follow.

**BY THE COURT:**

_____
MARY KAY COSTELLO
United States District Judge

11